AUDUBON INSURANCE COMPANY,
Plaintiff,

v.

TERRY ROAD WINE AND LIQUOR,
INC., Melissa A. May and Donald
R. May, Defendants.

Civ. A. No. 3:94–CV–333(B)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 14, 1995.

Edward J. Currie, Jr., Currie, Johnson, Griffin, Gaines & Myers, Jackson, MS, for Audubon Ins. Co.

Craig E. Brasfield, Forman, Perry, Watkins & Krutz, Jackson, MS, for Terry Road Wine and Liquor, Inc.

Donnie Herbert Evans, Don H. Evans, Attorney, Jackson, MS, for Melissa A. May and Donald R. May.

### OPINION AND ORDER

BARBOUR, Chief Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiff and the Defendants in this declaratory judgment action

all move the Court for summary judgment. Having considered the motions of the parties, the responses, the supporting and opposing memoranda and the relevant exhibits, the Court rules that the Motion of Plaintiff Audubon Insurance Company ("Audubon") for Summary Judgment [11] is granted in part and denied in part and the Cross–Motions of Defendant Terry Road Wine and Liquor, Inc. ("Terry Road") and of Defendants Melissa and Donald May for Summary Judgment [15 & 16 respectively] are denied in part and granted in part.

## I. BACKGROUND

Audubon had in force with Terry Road, a retailer licensed by the State of Mississippi to sell alcoholic beverages, a business owner's policy of insurance bearing Policy No. BOP 150704. This policy provided for a period of coverage extending from September 22, 1993, to September 22, 1994.

On or about April 1, 1994, the Mays, who are husband and wife, filed two separate lawsuits in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Terry Road was named as a defendant in both of these suits. The actions were styled and numbered as *Melissa A. May, A Minor, By and Through Her Next Friend, Donald R. May v. Waring Oil Company, Terry Road Wine and Liquor, Inc. and Gardners, Inc.,* No. 251–94–312 and *Donald R. May, A Minor v. Waring Oil Company, Terry Road Wine and Liquor, Inc. and Gardners, Inc.,* No. 251–94–310. In both of these lawsuits, the Mays alleged that on or about November 24, 1993, Terry Road,

> [S]old a fifth of tequila to Donald R. May, a minor, who was under twenty-one (21) years of age, without asking for any identification or checking in any fashion or taking any reasonable steps to determine whether said minor was old enough to purchase beer or determine the minor's age. Said sale was in violation of Miss. Code Ann. § 67–1–81.

Circuit Ct.Compls. of Melissa and Donald May ¶ 10, attached to Audubon Compl. for Decl.J. as Ex. B. In view of the alleged illegal sale of alcohol to Donald May, the Mays asserted that Terry Road was liable for the injuries that they both suffered when Ronnie White, the driver of the automobile in which the Mays were riding as passengers, consumed the ill-gotten alcohol. The Mays alleged that White became intoxicated to the point that his ability to drive became impaired and he lost control of the automobile, ran off the roadway and collided with a tree.

By alleging that the illegal sale of alcohol was the direct and proximate cause of the automobile accident, the Mays grounded the liability of Terry Road on various theories of negligence, including the theory of negligence *per se* based upon violation of statute. In each of their complaints, the Mays prayed for monetary relief in the form of both compensatory damages for their actual injuries and punitive damages for the alleged recklessness or gross negligence of Terry Road and its employees in selling Donald May the tequila.

Audubon, under a reservation of rights, undertook the defense of Terry Road in the two Circuit Court actions. To this end, it hired the Jackson, Mississippi law firm of Shell, Buford, Bufkin, Callicutt & Perry. On June 9, 1994, Audubon filed the present action seeking a declaration that it is under no duty under the terms of its insurance policy to either defend or indemnify Terry Road with respect to either of the Mays' two actions.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. at 2552–53. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

### III. DISCUSSION

#### a) What are the Obligations of Audubon Under the Terms of Its Policy?

The Audubon policy of insurance issued to Terry Road sets forth the following general coverage provision:

A. COVERAGES

1. **Business Liability**

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

Audubon Businessowners Policy ¶ A.1.a., attached as Ex. A. to Audubon Compl. for Decl.J. Notwithstanding this language, the Audubon policy contains the following policy exclusion:

B. EXCLUSIONS

1. **Applicable to Business Liability Coverage**—This insurance does not apply to:

 . . . .

 c. "Bodily injury" ... for which any insured may be held liable by reason of:

 (1) Causing or contributing to the intoxication of any person;

 (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

 (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

 This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Audubon Businessowners Policy ¶ B.1.c. (hereinafter referred to as "the alcohol/intoxication clause"). The policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Audubon Businessowners Policy ¶ F.3.

In this diversity action, the Court is bound by *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply the substantive law of the state in which it sits. "The general rule is well settled [in Mississippi] that the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action." *Southern Farm Bureau Casualty Ins. Co. v. Logan,* 238 Miss. 580, 119 So.2d 268, 271 (1960). "Only if the pleadings state facts 'bringing the injury within the coverage of the policy' must the insurer defend." *Employers Reinsurance v. Martin,*

*Gordon & Jones,* 767 F.Supp. 1355, 1360 (S.D.Miss.1991) (quoting *Foreman v. Continental Cas. Co.,* 770 F.2d 487, 489 (5th Cir. 1985)).

 The complaint in Circuit Court Action No. 251–94–312 alleges that as a result of the illegal sale of an alcoholic beverage to a minor, Melissa May suffered severe injury when the automobile in which she was a passenger was involved in an accident. The complaint prays for compensation on the basis of the following allegations of injury resulting from this accident:

> [T]he plaintiff, Melissa A. May, has suffered serious and permanent bodily injury consisting of a severe fracture to the neck which has left her permanently paralyzed, numerous bruises, abrasions and contusions to other parts of her body, along with injury to her skeletal system, muscular system and nervous system. That as a result of her injuries she has had to be treated by doctors and other practitioners and has been caused to suffer great pain, severe shock and intense mental anguish and will suffer more of the same in the future. That after everything has been done that medical science can do, the plaintiff, Melissa A. May, will be permanently paralyzed for the rest of her life. The defendant's negligence has directly caused the plaintiff to have already incurred hospital, medical and drug bills in a large amount and she can reasonably expect to incur extensive medical and medical related expenses in the future for her treatment and care for the rest of her life. Plaintiff would further show that because of her paralysis she has suffered a permanent loss of wage earning capacity as a result of this accident due to the fact that she will never be gainfully employed.

Circuit Ct. Compl. of Melissa May ¶ 17. Clearly, Melissa May's allegations of injury comprise the types of injuries for which the alcohol/intoxication clause in the Audubon policy excludes coverage. Accordingly, the Court rules that Audubon has no duty under the terms of its policy to either defend or indemnify Terry Road with respect to Hinds

County Circuit Court Action No. 251–94–312.[1]

The complaint in Circuit Court Action No. 251–94–310 includes allegations regarding the cause of Donald May's injuries which are virtually identical to those included in Circuit Court Action No. 251–94–312. Likewise, in terms of the specific injuries which Donald May alleges he suffered as a result of the illegal sale of alcohol and the subsequent accident, Donald May's complaint also contains detailed accounts of physical and mental injury and suffering. *See* Circuit Ct. Compl. of Donald May ¶ 17. These injuries clearly fall within the scope of the alcohol/intoxication clause. Therefore, Audubon has no duty to indemnify with respect to them.

 Donald May's complaint, however, also prays for compensation for loss of consortium and loss of the household services of his wife. According to *Black's Law Dictionary* (6th ed. 1990), the term "consortium" is defined as:

> Conjugal fellowship of husband and wife, and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation. Loss of "consortium" consists of several elements, encompassing not only material services but such intangibles as society, guidance, companionship, and sexual relations. Damages for loss of consortium are commonly sought ... when spouse has been seriously injured through negligence of another, or by spouse against third person alleging that he or she has caused the breaking-up of marriage. Cause of action for "consortium" occasioned by injury to marriage partner, is a separate cause of action belonging to the spouse of the injured married partner and though derivative in the sense of being occasioned by injury to spouse, is a direct injury to the spouse who has lost the consortium.

*Id.* at 309 (citations omitted).

Bearing in mind the well recognized principle that in the insurance context, the contract of insurance is to be strictly construed against the drafter, the Court rules that inju-

---

**1.** Both Terry Road and the Mays argue that the exclusion found in the alcohol/intoxication clause is ambiguous. The Court finds that this argument is without merit.

ries for loss of consortium do not fit within the definition of "bodily injury" included in the policy. Simply put, they do not qualify as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Audubon Businessowners Policy ¶ F.3. Therefore, they do not fit within the scope of the alcohol/intoxication clause which specifically excludes coverage for,

> "*Bodily injury*" ... for which any insured may be held liable by reason of ... [c]ausing or contributing to the intoxication of any person, ... [t]he furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol ... or ... [a]ny statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

*Id.* ¶ B.1.c. (emphasis added).

By its express terms, the general coverage provision in the Audubon policy states that Audubon will pay "those sums that the insured becomes legally obligated to pay as damages *because of* 'bodily injury' ... to which ... [the] insurance applies." *Id.* ¶ A.1.a. (emphasis added). Clearly, as was discussed in *Black's Law Dictionary,* loss of consortium occurs as the result of physical injury to a spouse. In this sense, then, damages for loss of consortium can be said to be *because of* the bodily injury (as the term "bodily injury" is defined in the policy) suffered by Donald May's wife. Therefore, under the express terms of its policy, Audubon is under a legal obligation to indemnify Terry Road should Terry Road become obligated to pay damages to Donald May for his loss of consortium claim.

■ For related reasons, the Court also rules that Audubon is under a duty to provide a defense to Terry Road with respect to

the whole of Donald May's suit. "[T]he duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is *any* basis for potential liability under the policy." *Merchants Co. v. American Motorists Inc.,* 794 F.Supp. 611 (S.D.Miss.1992) (emphasis added) (citing *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal. App.3d 598, 222 Cal.Rptr. 276 (1986)). In view of the fact that Donald May's claim for loss of consortium creates a basis for potential liability under the policy for which Audubon must indemnify Terry Road, the Court rules that Audubon has a duty to provide a defense for Terry Road in Donald May's suit.

To summarize, the Court rules that under the terms of its policy of insurance, Audubon has no duty to either indemnify or defend Terry Road in connection with Circuit Court Action No. 251–94–312 (Melissa May's lawsuit). With respect to Circuit Court Action No. 251–94–310 (Donald May's lawsuit), however, the policy imposes upon Audubon a duty to indemnify Terry Road with respect to Donald May's claim for loss of consortium and to defend Terry Road with respect to the whole suit.[2] In view of the fact that the remainder of Donald May's claims are for the physical and mental injury that he alleges he suffered, the Court rules that should he prevail on these claims, Audubon has no duty to indemnify Terry Road for any judgment that he may succeed in winning against Terry Road for such damages.

b) Estoppel

■ It is undisputed that Audubon has so far provided for the legal defense of Terry Road under a reservation of rights. Notwithstanding this fact, both Terry Road and the Mays oppose any declaration that Audubon does not have a duty to defend or indem-

---

**2.** The Court recognizes that it may have been the intent of Audubon in drafting its policy to exclude coverage for the type of loss involved in Donald May's loss of consortium claim. As should be clear from this Opinion and Order, however, Audubon used language in its policy which failed to achieve this result. For example, Audubon could have accomplished such a result by using the preposition "for" in place of the words "because of" in paragraph A.1.a. of the policy. Such a word choice would have nar-

rowed the scope of coverage to only those damages *consisting of* "bodily injury", "property damage", "personal injury" or "advertising injury" as those terms are defined in the policy. Alternatively, Audubon could have begun the first sentence of paragraph B.1.c. with the phrase "Any injury or loss, including 'bodily injury' or 'property damage'," instead of beginning that sentence with only the terms "Bodily injury" and "Property Damage."

nify in connection with the Mays' suits. They do this by arguing that Audubon should be estopped from withdrawing any defense that it has so far provided. The Court disagrees.

In support of their position, both Terry Road and the Mays cite a previous opinion of this Court, *Employers Reinsurance v. Martin, Gordon & Jones,* 767 F.Supp. 1355 (S.D.Miss.1991). Like the case *sub judice,* that decision involved a situation wherein an insurer brought a declaratory judgment action after providing a defense for its insureds under a reservation of rights. Upon cross-motions for summary judgment, the Court ruled that the insurer had no duty to defend or indemnify its insureds since the conduct for which its insureds were being sued fell outside the scope of coverage provided by the policy. Nevertheless, and notwithstanding the fact that the insurer had from the outset undertaken the defense of its insureds under a reservation of rights, the Court implicitly recognized that an insurer could still be estopped from withdrawing its defense if to do so would result in prejudice to its insureds. *Id.* at 1363–63. Quoting *Southern Farm Bureau Casualty Ins. Co. v. Logan,* 238 Miss. 580, 119 So.2d 268 (1960), the Court stated:

[T]he fact that the insurer assumes the defense may give rise to a duty to continue with the defense and make the insurer liable for its withdrawal therefrom, though it would not have been liable if it had not assumed the defense in the first instance. And the general rule is that an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured.

*Employers Reinsurance,* 767 F.Supp. at 1363–64.

The only specific evidence of prejudice that Terry Road offers is found in the affidavit of John T. Leach, the owner and manager of Terry Road. Leach swears that:

The withdrawal of insurance coverage and payment of my attorneys' fees in defending these ... law suits would have a catastrophic financial impact on my busi-

ness in the form of an unaffordable expense. I am unable to estimate the upper limits of cost of defending these law suits. A judgment against my business, which is also impossible to estimate, could bankrupt my business.

Leach Aff. at 2, identified as Ex. A. in Supp. of Terry Road Resp. to Mot. for Summ. J. and Cross Mot. for Summ. J.

The Court finds that Leach's affidavit testimony is insufficient to prove the type of prejudice contemplated by the Court in *Employers Reinsurance.* On this point, *Logan,* the Mississippi Supreme Court decision from which the Court quoted in *Employers Reinsurance* in acknowledging the possibility that an insurer could be estopped from withdrawing a defense, is instructive. In *Logan,* the plaintiff brought a personal injury action against the insured. After the suit had been on file for three weeks and before an answer had been filed, the insurer sent a letter to the plaintiff informing him that the insurance policy provided no coverage for the type of injury for which he was suing. A copy of this letter was also sent to the insured. Nevertheless, and without waiving the rights of the insurer, the letter also stated that the insurer would attempt to settle the suit with the plaintiff and that if such efforts ultimately proved unsuccessful, it would immediately notify its insured that it would not be providing her with a defense.

Five days after the letter was sent to the plaintiff, the plaintiff's attorney rejected the settlement offer of the insurer. However, it was not until six days after the date on which that offer was rejected *and on the same day as a default judgment in the underlying suit was entered against the insured,* that the insurer finally sent a letter to the insured advising her of the rejection of the settlement offer, the final decision not to provide her with a defense and the necessity for her to secure counsel on her own. In reviewing this course of events, the *Logan* court stated:

[The record shows that] the insurer was attempting a settlement of the case and by a copy of its letter to ... [the plaintiff's] attorney which was sent to insured, the latter had a right to assume that insurer was looking after the case and would notify

her if and when it was necessary for her to employ attorneys of her own. In effect, she was told they were handling the case and would notify her if they were not able to settle. When insurer did notify insured that she would have to employ attorneys and provide her own defense the default judgment had already been rendered against her. Absent circumstances not appearing in the pleadings, showing lack of good faith on the part of insured, we are of the opinion that insurer is liable for the payment of the judgment. . . .

119 So.2d at 272.

The case *sub judice* is factually distinguishable from the situation in *Logan.* Here, the parties have known from the very outset that Audubon had taken the position that there may not be coverage under the policy with respect to the Mays' suits and that as early as May 31, 1994, Audubon had informed Terry Road that it was providing it with a defense under a reservation of rights.[3] Thus, there can be no claim that Terry Road had a right to assume that Audubon had taken upon itself the unequivocal duty to look after the interests of Terry Road or had lulled Terry Road into a false sense of security comparable to that involved in *Logan*—a sense of security which, by way of its untimely communications, the insurer in *Logan* ultimately betrayed.

In spite of giving a reservation of rights to its insured, Audubon *did* hire defense counsel for Terry Road and there has been no suggestion that this counsel has so far not lived up to its duty of zealous representation in such things such as filing answers to the Mays' complaints or any other aspect of the Circuit Court litigation. There has been no showing that, at this point in the Circuit Court proceedings, if Terry Road were forced to secure new counsel on its own, that such a change would prejudice the manner in which the defense of the actions would be conducted. Specifically, there is nothing submitted by Terry Road showing prejudice comparable to an entry of a default judgment following the inducement by Audubon of the reasonable reliance of Terry Road.

The only evidence of prejudice that Terry Road submits essentially consists of Leach's testimony that he cannot afford the cost of securing his own defense and that the cost of defending the suits and/or paying any judgment would bankrupt his business. That such allegations state a type of prejudice cannot be doubted. The possibility that Terry Road will not be able to afford to secure an attorney or may not be able to pay any judgment(s) against it, however, is not traceable to any action or fault on the part of Audubon. Such a possibility would have existed even if Terry Road had never acquired its policy of insurance with Audubon in the first place. Absent some showing that Terry Road had a reasonable expectation that it could unconditionally trust that Audubon would continue to defend it and that it did so to its detriment, the estoppel argument of the Mays and Terry Road must fail.

## IV. CONCLUSION

In view of the foregoing discussion, the Court grants the Motion of Audubon for Summary Judgment in part and denies it in part and grants the Cross Motions of the Mays and Terry Road for Summary Judgment in part and denies them in part. Specifically, the Court rules that with respect to the lawsuit brought by Melissa May, Audubon is under no obligation to defend or indemnify Terry Road. With respect to the lawsuit brought by Donald May, Audubon is under a duty to indemnify Terry Road only insofar as his claim for loss of consortium is concerned. However, the fact that such a duty exists with respect to the loss of consortium claim brings the whole of Donald May's suit within the broader scope of the duty to defend. Therefore, under the terms of its policy, Audubon is under a duty to provide a defense for Terry Road in Donald May's suit. Finally, the estoppel argument by which the Mays and Terry Road contend that Audubon should not be allowed to withdraw its defense(s) is without merit and therefore fails. A Final Judgment declaring the rights of the parties and finally dismissing this case will

---

**3.** Indeed, the present action seeking a declaration that Audubon was under no duty to defend or indemnify Terry Road was filed by Audubon on June 9, 1994.

be entered this day along with this Opinion and Order.

SO ORDERED.